**IN RE: I.J.L.; B.D.L.; Juvenile Officer, Respondents,**

v.

**J.I., Appellant.**

**WD 80477**

Missouri Court of Appeals, Western District.

OPINION FILED: OCTOBER 3, 2017

---

512

Sarah Johnson, Kansas City, MO, Mitchell Joseph Widener, Kansas City, MO, Counsel for Respondents.

Amanda Marie Showalter, Kansas City, MO, Counsel for Appellant.

Before Division Two: Edward R. Ardini, Jr., Presiding Judge, Karen King Mitchell, Judge, Anthony Rex Gabbert, Judge

Anthony Rex Gabbert, Judge

Appellant appeals the trial court's decision to terminate his parental rights. He raises three points on appeal: Point I asserts the trial court erred in finding IJL's adoption did not require Appellant's consent; Point II asserts error in finding Appellant had abused or neglected IJL; Point III asserts error in finding Appellant failed to rectify the conditions leading to the assumption of jurisdiction. We affirm.

## BACKGROUND

IJL was born on December 3, 2014. Her biological father is Appellant and her biological mother is EDL. Both parents were incarcerated for conspiracy with intent to distribute methamphetamines. Due to the parents' incarceration, the Juvenile Court assumed jurisdiction of IJL, placing her in the custody of the Children's Division in case numbered 1416-JU001516. Both parents remained incarcerated throughout the Juvenile Court proceedings.

On February 19, 2016, IJL's maternal uncle ("Petitioner") filed a Petition for Transfer of Custody and Adoption. On April 13, 2016, the court entered an Order of Temporary Custody and placed IJL in Petitioner's custody. EDL filed her Consent to Termination of Parental Rights and Adoption with the court on May 22, 2016. Petitioner filed a First Amended Petition for Transfer of Custody, Termination of Parental Rights, and Adoption on August 23, 2016.

The trial took place on December 9, 2016. Upon agreement by the parties, the court bifurcated the matter, considering only evidence related to the termination of parental rights and whether the parents' needed to give their consent to the adoption. Because the parents were unable to appear in person, they testified via telephone and polycom.

EDL testified Appellant physically abused her on a regular basis during their six to seven month relationship. The abuse included strangling EDL daily and kicking her in the stomach when Appellant knew she was pregnant, because Appellant did not believe the baby was his. He also knocked out four of her teeth. Some of the incidents, EDL added, occurred in the presence of another of her children. EDL believed that termination of her and Appellant's parental rights would be in IJL's best interest.

Crystal Epley testified on behalf of the Missouri Children's Division. She stated that the agency was never able to recommend that IJL be reunited with Appellant and could not reasonably foresee a time soon when reunification would be possible. Appellant has never held IJL, did not request services from the agency, and was only having supervised telephone contact with IJL. He sent a total of fourteen letters to her throughout the pendency of the underlying Juvenile Court matter. While IJL was under agency care, Appellant failed to provide the child with any child support, necessities, or gifts.

Appellant testified that, contrary to EDL's testimony, he had only learned of EDL's pregnancy immediately before being incarcerated. He stated he was excited about the pregnancy because the couple had been trying to have children. He testified that, despite being informed that he had no child support obligation, he had been paying support for a couple of months. Though Appellant claimed he made financial contributions for IJL, he was unable to determine how much he had contributed. He stated he was willing to provide support for IJL and claims to have bought her clothes and a car seat while she was under agency care.

Appellant denied all EDL's allegations of domestic violence, including those he had previously agreed to as a condition of his guilty plea. He testified that his mandatory sentence would be a minimum of

ten years. He also acknowledged selling methamphetamine after IJL was conceived, though he claims not to have known of the pregnancy. He did, however, acknowledge regular unsupervised visits to another one of his children while he was still selling methamphetamine. While incarcerated, Appellant completed a 12-Step program for his drug addiction and has not used drugs since his incarceration. As a part of his plea agreement, Appellant acknowledged that "he possessed some Semtex explosives and wanted to blow up [Detective] Bobbie Hawkin's residence" and "put him down so he couldn't get up again."

The Missouri Children's Division and the Guardian ad Litem recommended that termination of parental rights would be in the child's best interest. Judgment terminating parental rights was entered on January 9, 2017.

## POINT I

In his first point, Appellant argues the trial court erred in finding IJL's adoption did not require Appellant's consent. The "trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 815 (Mo. banc 2011) (citations omitted). We conclude there is substantial evidence supporting the trial court's decision to enter adoption without Appellant's consent.

The trial court entered adoption without Appellant's consent pursuant to Section 453.040,[1] which provides:

The consent to the adoption of a child is not required of . . .

(7) A parent who has for a period of at least six months . . . immediately prior to the filing of the petition for adoption, willfully abandoned the child or, for a period of at least six months prior to the filing of the petition for adoption, willfully, substantially and continuously neglected to provide him with necessary care and protection.

Evidence that Appellant provided support for IJL is scant. According to the Children's Division case supervisor, the agency received no financial support or other items for IJL's care during the six months preceding the filing of the Petition for Adoption. This account conflicts with Appellant's assertion his family supported IJL on his behalf. The trial court did not find Appellant's account credible. While the court was aware of Appellant's phone calls and letters to IJL during the first two years of her life, considering the child's age, the court did not "find letters and phone calls to establish the natural father's intent to meet the obligation of 'meaningful contact' with the minor child such to satisfy his parental obligation." We find nothing in the record substantially undermining the trial court's determination. Point I is denied.

## POINT II

In his second point, Appellant asserts the trial court erred in finding Appellant had abused or neglected IJL. In reviewing the trial court's decision to terminate parental rights, this court will review "whether clear, cogent, and convincing evidence was presented to support a statutory ground for terminating parental rights[.]" 332 S.W.3d at 815. If so, the court must then ask "whether termination of parental rights was in the best interest of the child." *Id.* at 815-16. We conclude clear, cogent, and convincing evidence sup-

---

1. All statutory references are to RSMo 2000 (as supplemented through 2016), unless otherwise specified.

ported the trial court's decision to terminate parental rights, and further conclude that such decision was in the best interest of the child.

The trial court terminated Appellant's parental rights pursuant to Section 211.447.5(2)(d), which provides:

> The child has been abused or neglected. In determining whether to terminate parental rights pursuant to this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:
>
> (d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development.

Upon review of the record, the court concluded that Appellant "has failed to make even token efforts to provide for the minor child since the time she was placed in care." Though Appellant claimed his family would provide for IJL "pending his release from incarceration ... no other actions for adoption are pending before the Court by any of natural father's family."

Appellant offers no other evidence of providing support for IJL beyond the support claimed in the preceding point, which the trial court found to lack credibility or failed to constitute meaningful contact. Point II is denied.

### POINT III

■ In his final point, Appellant asserts the trial court erred in finding Appellant failed to remedy the conditions leading to the assumption of jurisdiction. We conclude clear, cogent, and convincing evidence supported the trial court's decision to terminate Appellant's parental rights, and further conclude that such decision was in the best interest of the child.

The court found additional grounds for terminating Appellant's parental rights under Section 211.447.5(3), which has been formulated into a tripartite test. "A termination based on failure to rectify may be granted when the following elements of 211.447.5(3) are satisfied:

1) the child has been under the court's care for at least a year; and
2) the conditions which led to the child being taken into care still persist, or conditions of a potentially harmful nature continue to exist; and
3) there is little likelihood that those conditions will be remedied at an early date so that the child may be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home."

*In the Interest of KMW*, 342 S.W.3d 353, 359 (Mo. App. 2011).

The first element is easily met, as IJL has been under the court's care for over two years. Second, although Appellant completed a 12-Step program to treat his chemical dependency, the Court was unable to determine whether Appellant could maintain his sobriety once released. Also troubling to the court, Appellant did not seem to accept any responsibility for his actions, downplayed the gravity of his actions, and even denied "the very factual allegations he has previously agreed to in his federal criminal case." Thus, the court found that Appellant "is in the same situation and condition he was in at the time this child came into care," and the child would be at risk of harm under Appellant's care. Third, the court found that the "[e]fforts of the Juvenile Officer, the Children's Division and other agencies have failed in aiding" Appellant so that he could be reunited with IJL and provide a proper home

for her. Due to his incarceration, Appellant's ability to provide a home for IJL any time soon was unlikely. The court further noted that IJL "has been placed out of her parents' care her entire life," suggesting that continuing the parent-child relationship with Appellant would diminish her chances of finding a stable home. Clear, cogent, and convincing evidence supports the court's determination that Appellant has failed to rectify the conditions which led to the assumption of jurisdiction and that termination of Appellant's parental rights is in the best interest of the child. Point III is denied.

## CONCLUSION

The judgment of the trial court is affirmed.

All concur.